**Ray C. IMEL, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. C–3264.**

United States District Court, D. Colorado.

June 26, 1973.

Supplemental Opinion May 9, 1974.

Rothgerber, Appel & Powers by Ira C. Rothgerber, Jr., Denver, Colo., for plaintiff.

Fred B. Ugast, Acting Asst. Atty. Gen., Stanley F. Krysa and Stephen J. Swift, Dept. of Justice, Washington, D. C., James L. Treece, U. S. Atty., Denver, Colo., for defendant.

## MEMORANDUM OPINION

WINNER, District Judge.

This is an income tax refund case. The question as phrased in the government's brief is:

"Whether the transfer of plaintiff's appreciated property to his wife pursuant to a property settlement [agreement] was a taxable event such that plaintiff is liable for capital gains for the year 1965." [1]

Plaintiff adds a second question as to whether the depreciation of certain stocks transferred to a corporation should be offset against the appreciation of other stocks, but we do not reach that question in this opinion.

The government claims a tax only on transfers of property which stood in husband's name and it claims no tax against transfers of property standing in the joint names of husband and wife at time of the divorce. The Revenue Agent determined that husband's property so transferred to wife had a total cost basis to husband of $400,864.44; that its value on the date of transfer was $1,114,170.58; that plaintiff realized a long-term capital gain of $356,653.07; that $178,326.53 should be added to husband's income for 1965 and that plaintiff owed additional income taxes in the amount of $92,244.51, plus $17,829.73 interest. Claim for refund was denied, and this suit (of which the Court has jurisdiction under 28 U.S.C. § 1346(a)(1)) followed. The government has reported that valuation issues have been tentatively resolved by agreement of the parties, and the government has requested that if its contentions are upheld, a hearing on valuation issues be deferred pending resolution of the offer in compromise submitted by plaintiff.[2]

Many of the facts are not in dispute. In part, we find the facts to be as stated in the government's brief, and, as is there said:

"On July 31, 1964, Ray C. Imel, plaintiff and his wife, Genevieve E. Imel, were granted a divorce in the State of Colorado after 35 years of marriage. A property settlement agreement was entered into by the plaintiff and his former wife on February 5, 1965, and approved by the divorce court on February 9, 1965.[3] Pursuant to the prop-

---

1. The question really isn't quite that narrow, because the government's phraseology of the question omits any mention of the fact findings made by the divorce court.

2. If the basic question is resolved in plaintiff's favor, the valuation issues will never have to be reached.

3. As will be discussed presently, the property settlement agreement contained some unusual provisions.

erty settlement agreement, fifty percent (50%) of the property owned by the plaintiff was transferred to his wife. The transfer was effectuated by transferring the plaintiff's property to three newly formed corporations [Thirteenth Street Corporation, Baseline Corporation and Mariposa Securities, Inc.] and to an already existing corporation [Ray C. Imel, Inc.] on February 11, 1965. Fifty percent (50%) of the stock of each corporation was then issued each to plaintiff and his former wife."

The divorce decree was entered July 31, 1964, and the divorce court retained jurisdiction to settle "the issues in this case pertaining to alimony, property division and child support." Some seven months later, the parties entered into the property settlement agreement. In it husband and wife said that they "recognize the respective rights of each in property accumulated during the period of the marriage of the parties." The stipulation said, inter alia:

"3.1 By virtue of their joint efforts, the parties have accumulated real estate described as follows. . . .[4]

"4.1 By their joint efforts during the period of marriage, the parties have acquired corporation stocks which are held in the names of the parties individually or as joint tenants . . . .

"5.1 In partial recognition of the contributions of each party to the success of Ray C. Imel, Inc., an existing Colorado corporation in which, as of the date hereof, the defendant is the sole owner of stock, it is agreed that the said Ray C. Imel, Inc. will transfer to Baseline Corporation, a Colorado corporation to be formed. . . .

"6.1 In further recognition of the contribution by the parties to the success of Ray C. Imel, Inc., it is agreed that the parties will execute such documents . . . ."

The overall structuring of the property settlement agreement was to issue a new class of stock in Ray C. Imel, Inc. to wife [this was the corporation owning much of the family estate]. Other stocks, most of which stood in husband's name, were transferred to Mariposa Securities, Inc., and stock in Mariposa was issued to husband and wife 50–50. Motor vehicles were placed in Baseline, Inc., and its stock also was issued equally to husband and wife, as was the stock in the corporation in which title to the real estate was placed, Thirteenth Street Corporation. Husband and wife and two of their sons were to comprise the board of directors of all corporations. Both husband and wife gave up all rights of inheritance and wife gave up any claim to alimony. The parties then agreed to make reciprocal wills under which the stock owned by either in Ray C. Imel, Inc. would pass to the survivor if the survivor was then unmarried, and, if at the date of death of the first to die, the survivor had remarried, the stock would go to the surviving sons of the parties.

The divorce court approved the stipulation and expressly found that "the plaintiff aided materially in the (sic) accumulating the wealth and the property of the parties and that the Stipulation presented by the parties is a fair recognition of the Plaintiff's participation in accumulating said wealth and property and represents a fair division of the property." It was ordered that "By virtue of the provisions of the Stipulation hereby approved the Court finds and orders that Defendant shall not pay alimony to Plaintiff."

The divorce court's findings were supported by testimony at our trial, and, based on the testimony received in this court, we find that wife made substantial contributions to the accumulation of the family estate. Between 1936 and 1942, she worked in the operation of a gold mining venture in Jamestown, Colo-

---

4. Four parcels of real estate were listed. Two stood in the name of husband and two stood in the names of husband and wife jointly.

rado. Due probably to the fact that she had more education than did her husband, she handled the books and payroll and she did all of the banking. Between 1942 and 1944, husband worked as a salaried employee of a third person, and wife did not contribute to the family estate, but commencing in 1944, she made substantial contributions to the operation of Bill's Place, a tavern in Boulder. Again she handled the bookwork and the banking, and she prepared the sandwiches which were served. Then, in 1945, a second tavern, the Tip-Top was opened, and wife ran this almost single handedly. [Nevertheless, title to the Tip-Top was in husband's name.] The Imels then bought a liquor store in Estes Park in partnership with another couple, and both husband and wife worked there at night while the other couple ran the establishment during the day. Later, husband bought the Anchorage in Boulder [later known as Tulagi's] and wife again handled some of the banking and bookwork. They then got into the stock market and wife shared in the investment decisions. Later the parties bought the Gondolier Building in Boulder, and they built another building which was leased to a laundry. This is one of the properties held in joint tenancy. From at least 1948, to the date of the divorce decree, the family bank account was joint.

In 1953, Imel acquired a wholesale beer franchise, and it is from this that much of the family fortune came. Title to this business was originally in Imel's name, and it was later transferred to Ray C. Imel, Inc. The corporation was conducted somewhat informally, and it is not entirely clear whether Mrs. Imel was or was not an officer and director during much of the time, but it is certain that many documents filed for public record do not show that she had any record interest in the business. However, with equal certainty, she did participate in making many if not most important business decisions in connection with the conduct of this business and, just as the divorce court found, she did

contribute greatly to the success of this business, although she was paid no salary by the corporation. Thus, we have here a case in which, at the time of the property settlement, the parties agreed that the family estate resulted from the joint efforts of the parties, the divorce court so found and the evidence at our trial fully supports that finding and we make a similar finding based on the evidence we heard.

With these findings we pass to the problem of attempting to decide the legal question presented; i. e., whether under Colorado law the property settlement agreement in question and the property transfers made thereunder were transfers on which plaintiff owed a capital gains tax. The government says that the United States Court of Appeals for the Tenth Circuit has already passed on the question, and, in effect, the government says that stare decisis demands that judgment enter in its favor. For reasons which we shall now discuss, we don't think that it is quite that simple.

The genesis of the problem is United States v. Davis (1962) 370 U.S. 65, 82 S.Ct. 1190, 8 L.Ed.2d 335. There, by property settlement agreement executed prior to divorce, Davis transferred property to his wife. Delaware law applied, and the Supreme Court held that under Delaware law, Davis owed a capital gains tax. The Supreme Court said:

"Under Delaware law all the property transferred was that of the taxpayer, subject to certain statutory marital rights of the wife including a right of intestate succession and a right upon divorce to a share of the husband's property. Specifically as a 'division in settlement of their property' the taxpayer agreed to transfer to his wife, *inter alia*, 1,000 shares of stock in the E. I. du Pont de Nemours & Co. The then Mrs. Davis agreed to accept this division 'in full settlement and satisfaction of any and all claims and rights against the husband whatsoever (including but not by way of limitation, dower and all rights under the

laws of testacy and intestacy)
. . . .'

. . . . . .

"We now turn to the threshold question of whether the transfer in issue was an appropriate occasion for taxing the accretion to the stock. There can be no doubt that Congress, as evidenced by its inclusive definition of income subject to taxation, i. e., 'all income from whatever source derived, including . . . [g]ains derived from dealings in property,' intended that the economic growth of this stock be taxed. The problem confronting us is simply *when* is such accretion to be taxed. Should the economic gain be presently assessed against taxpayer, or should this assessment await a subsequent transfer of the property by the wife? The controlling statutory language, which provides that gains from dealings in property are to be taxed upon 'sale or other disposition,' is too general to include or exclude conclusively the transaction presently in issue. Recognizing this, the Government and the taxpayer argue by analogy with transactions more easily classified as within or without the ambient of taxable events. *The taxpayer asserts that the present disposition is comparable to a non-taxable division of property between two co-owners, while the Government contends it more resembles a taxable transfer of property in exchange for the release of an independent legal obligation.* Neither disputes the validity of the other's starting point.

"In support of his analogy the taxpayer argues that to draw a distinction between a wife's interest in the property of her husband in a common-law jurisdiction such as Delaware and the property interest of a wife in a typical community property jurisdiction would commit a double sin; for such differentiation would depend upon 'elusive and subtle casuistries which . . . possess no relevance for tax

purposes,' Helvering v. Hallock, 309 U.S. 106, 118, 60 S.Ct. 444, 450, 84 L. Ed. 604 (1940), and would create disparities between common-law and community property jurisdictions in contradiction to Congress' general policy of equality between the two. The taxpayer's analogy, however, stumbles on its own premise, for the inchoate rights granted a wife in her husband's property by the Delaware law do not even remotely reach the dignity of co-ownership. The wife has no interest —passive or active—over the management or disposition of her husband's personal property. Her rights are not descendable, and she must survive him to share in his intestate estate. *Upon dissolution of the marriage she shares in the property only to such extent as the court deems 'reasonable.'* [5] 13 Del.Code Ann. § 1531(a). What is 'reasonable' might be ascertained independently of the extent of the husband's property by such criteria as the wife's financial condition, her needs in relation to her accustomed station in life, her age and health, the number of children and their ages, and the earning capacity of the husband. See, e. g., Beres v. Beres, 52 Del. 133, 154 A.2d 384 (1959).

"This is not to say it would be completely illogical to consider the shearing off of the wife's rights in her husband's property as a division of that property, but we believe the contrary to be the more reasonable construction. Regardless of the tags, Delaware seems only to place a burden on the husband's property rather than to make the wife a part owner thereof. *In the present context the rights of succession and reasonable share do not differ significantly from the husband's obligations of support and alimony. They all partake more of a personal liability of the husband than a property interest of the wife.* The effectuation of these marital rights may ultimately result in the owner-

---

5. Throughout this opinion emphasis is supplied unless otherwise noted.

ship of some of the husband's property as it did here, but certainly this happenstance does not equate the transaction with a division of property by co-owners. Although admittedly such a view may permit different tax treatment among the several States, this Court in the past has not ignored the differing effects on the federal taxing scheme of substantive differences between community property and common-law systems. E. g., Poe v. Seaborn, 282 U.S. 101, 51 S.Ct. 58, 75 L.Ed. 239 (1930). To be sure Congress has seen fit to alleviate this disparity in many areas, e. g., Revenue Act of 1948, 62 Stat. 110, but in other areas the facts of life are still with us."

With *Davis* decided, Pulliam v. Commissioner of Internal Revenue (1964) 329 F.2d 97, came before the Tenth Circuit Court of Appeals to determine whether the husband's transfer was taxable under Colorado law. In *Pulliam* there was no property settlement agreement, and the transfer was made pursuant to court order. There are many other differences between *Pulliam's* facts and ours, but the Tenth Circuit held that Colorado law required payment of the tax. It was held:

"The Colorado court in the divorce action noted that the parties had been married thirty years, that there were no children, and held that the petitioner had a duty to make provision for his wife's support. Under Colorado law the wife's rights during the marriage do not vest in her an ownership of any part of the husband's property. Thus the liability of the husband for support of his wife is more in the nature of a personal obligation. The right of dower does not exist in Colorado, and a husband who has title to the property may convey it without the consent of the wife. It appears that the only inchoate right of any consequence the wife has in Colorado is, if she survives her husband, she may reject provisions he makes for her in his will and take instead one-half of his estate. *In this instance the wife performed the usual duties of a housewife, and performed no other tasks to specifically assist in the accumulation of property, and brought no property into the marriage.*

"The divorce court acted under the Colorado statute *which permitted it* to make such provision for payment of alimony and maintainance of the wife *'as may be reasonable,'* and to require security for its payment, or to enforce payment, 'or may decree a division of property.' 3 Colo.Rev.Stat.1953 Ann. § 46–1–5. The divorce court recited the several factors it took into consideration, including the financial condition of the parties, the duty of the husband to support and maintain the wife, whether the wife brought any property into the marriage, the husband's earning capacity, and several other factors. As to the property, the divorce court then entered a decree that the parties each should have and retain as his or her sole and separate property all real and personal property the title to which was in his or her name at the time the action commenced. The decree also stated that it would act as a conveyance of title from petitioner to his wife of an additional described parcel.

.    .    .    .    .    .

"We do not characterize the transfer here as being either voluntary or involuntary in view of the fact that both parties to the divorce asked the court to make 'a division.' We hold that under the circumstances the result must be the same as if a property settlement had been reached by the husband and wife, as in United States v. Davis.

.    .    .    .    .    .

"The divorce court's decree has completely disposed of the property issue, and the wife's marital rights relating to that subject have been terminated. The property was allocated and we are concerned here only with the value of such property transferred to the wife and to then apply the equal value

**1108**

theory. The divorce decree transferred property to the wife to satisfy whatever rights she was asserting or which were otherwise in issue. The parties asked the divorce court in effect to settle the property matter.

"The transfer here concerned was a taxable event to support an imposition of the tax on the husband as held by the Tax Court and the Commissioner."

Not long after *Pulliam,* Collins v. Commissioner of Internal Revenue (1968) 388 F.2d 353, was decided by the Tenth Circuit. [This case we call *Collins # 1.*] The Court held that under Oklahoma law, a tax was owed by the husband who transferred property in accordance with a property settlement agreement. The court relied on *Pulliam,* and, in fact, discussed Colorado law in *Collins # 1* more fully than it did in *Pulliam.*[6] The Court said in *Collins # 1:*

"Petitioner bottoms his case upon an Oklahoma statute, 12 Okl.Stat.Ann. § 1278, and the numerous Oklahoma Supreme Court decisions interpreting the statute. He contends that this statute gives each spouse a vested interest in property jointly acquired during their marriage and the extent of that vested interest shall be determined by the court in any action brought to terminate the marriage relationship.

"The Commissioner seeks to sustain the decision of the Tax Court by arguing that the Oklahoma statute did not vest any property right in petitioner's spouse prior to the divorce decree; that her marital rights did not resemble those of co-ownership; she had no descendible interest in the stock; she could not have prevented the disposition of the stock by the husband at any time prior to the divorce; she had no claim to a fixed percentage of the property but the extent of her

claim was subject to a judicial determination of what was 'just and reasonable'; and, that determination depended upon factors other than her efforts during the marriage to enhance the value of the property, e. g., her needs, her station in life, costs of educating the children, etc.

· · · · · ·

"*There is no dispute but that we must, as the Supreme Court did in the Davis case and this court did in Pulliam v. C.I.R., supra, look to the state law controlling the disposition of the property to determine the exact nature of that disposition for tax characteristic purposes.* It is petitioner's contention in the instant case that an examination of the pertinent Oklahoma law reveals that the disposition was the division of jointly owned property.

"*Oklahoma is not a community property state,* nonetheless petitioner argues that Oklahoma by statutory command has created unique rights in the partners to the marriage that resemble those found in the community property states.

· · · · · ·

"In summation it appears that the division of jointly acquired property pursuant to a divorce decree in Oklahoma is in many instances in direct recognition of the wife's right to a share in the property. *This concept, however, is not unique to Oklahoma and Kansas, as claimed by petitioner.* Many states confer the power upon divorce courts to transfer to the wife property of the husband. It is true that no other state requires the division or so explicitly develops the concept. Nonetheless the same principle is recognized in other states. Of particular importance is the comparison of Oklahoma law and Colorado law in that this court has previously held

---

6. The Court's analysis of Colorado law set forth in *Collins #1* is the subject of much of the disagreement of the parties in this case, because Imel says that the Tenth Circuit misconstrued Colorado law, while, of course, the government thinks that the Tenth Circuit's *Collins #1* analysis of Colorado law is totally correct.

that a division under Colorado law is a taxable disposition of property.

"Colorado, by statute, provides that a property division may be made in addition to an award of alimony. Shapiro v. Shapiro, 115 Colo. 505, 176 P.2d 363. Two of the early Colorado cases dealing with the division of property regarded the act as an equitable division based upon the fact that the wife during the marriage had performed services which contributed to her husband's business advantage. Shapiro v. Shapiro, supra and Wigton v. Wigton, 73 Colo. 337, 216 P. 1055. *Apparently, however, this requirement that the wife make special contributions to accumulation beyond her duties as a wife does not exist today,* Kraus v. Kraus, 159 Colo. 331, 411 P.2d 240. [This passing comment by the Court concerning *Kraus* gives rise to much of the disagreement between the parties in our case.] Therefore, in Colorado as in Oklahoma the property division is considered separately from alimony and is grounded on the concept that the wife should have a share of the property upon divorce. In holding a property division under Colorado law to be taxable this court noted that 'the wife's rights during marriage do not vest in her an ownership of any part of the husband's property,' Pulliam v. C.I.R., 329 F.2d 97, that 'a husband who has title to the property may convey it without the consent of the wife,' Id. at 98, and that the divorce court in making such division may 'make such provision for payment of alimony and maintenance of the wife "as may be reasonable," ' Id. at 98.

*"It is difficult for us to see any distinction between Oklahoma and Colorado law sufficient to justify a different characterization of the property division.* In addition, whatever the nature of the rights granted by Oklahoma law to spouses in jointly acquired property it is clear they do not include the traditional ownership rights in property. These rights such

as descendible interest, right to control and disposition of property and vested interest are set out by the Supreme Court in United States v. Davis, supra, as factors that distinguish a marital division in satisfaction of a legal obligation from a division between co-owners. Since these traditional elements of co-ownership are lacking the fact that in making a decision the state courts speak as though they were dividing property between co-owners does not prevent the federal courts from saying that for tax purposes the division was in satisfaction of a marital obligation and thus taxable."

*Collins # 1* didn't last long, because less than seven months later the Supreme Court of Oklahoma decided *Collins # 2,* Collins v. Oklahoma Tax Commission (1968) 446 P.2d 290. Exactly the same facts were before the Oklahoma Supreme Court when it was asked to decide whether a state income capital gains tax was owed, and the Oklahoma Court said that the Tenth Circuit's interpretation of Oklahoma law was wrong. The Oklahoma Supreme Court said:

"Taxpayer reported no gain resulting from the stock transfer to Beverly on his 1959 income tax return. The Commissioner of Internal Revenue issued a deficiency assessment, fixing $20.00 per share as fair market value when transferred, and determined the transfer constituted disposition which established a long term capital gain. The deficiency assessment of $128,006.20 for 1959 income tax was paid under protest.

"This ruling was attacked in a proceeding before the U. S. Tax Court, which ruled adversely to Taxpayer upon grounds the stock transfer pursuant to the settlement agreement and incident to divorce constituted disposition of property resulting in taxable gain. See George F. Collins, Jr. v. C. I. R., 46 T.C. 461. The decision reflects that court's recognition of our statute, 12 O.S.1961, § 1278, and decisional law relevant to nature, existence of, and necessity for equitable division of property jointly ac-

quired during marriage. The decision also reflects the interpretation that the stock transfer, required to effect an equitable property division, was merely in return for Beverly's release of an independent legal obligation, to-wit: the legal obligation placed upon all property held in Taxpayer's name by Oklahoma law.

"This is bottomed upon the reasoning that Beverly had no specific interest in Liberty stock as distinguished from a general interest in all property jointly acquired during marriage, thus the transfer was not a division of jointly owned stock as would have been true ' * * * in a community property State if the stock were considered community property or the situation existing when the spouses are legally joint owners of the property divided.' Thus, because the parties neither held property as in a community property state, nor showed specific property to which title was taken jointly, the court declared the transaction was an exchange rather than 'a division of property by co-owners', as was the case in United States v. Davis, 370 U.S. 65, 82 S.Ct. 1190, 8 L.Ed.2d 335.

"Petition for review to the U. S. Circuit Court of Appeals resulted in affirmance of the Tax Court, upon grounds that under Oklahoma law the transfer was a 'taxable exchange' of property 'in satisfaction of a marital obligation' resulting in gain to the taxpayer, rather than division of jointly acquired property. Collins v. C. I. R. (CCA 10) 388 F.2d 353 (1966). The determination that Oklahoma law made this a sale or transfer, based upon factors and asserted differentiations not heretofore recognized or found in our decided cases, coupled with reliance upon authorities which will require further consideration. This becomes necessary because of the Tax Commissioner's adjudication, holding the Federal rule governed Taxpayer's Oklahoma income tax liability.

.     .     .     .     .     .

"Turning to the controlling question, it is observed that under 12 O.S.1961, §

1278, the particular proviso respecting division of jointly acquired property when granting divorce is not permissive, but defines a mandatory duty placed upon the trial court. This statute came into our code from the body of Kansas law, and has remained as adopted.

"The statute, 12 O.S.1961, § 1278, in pertinent part provides:

'. . . As to such property, whether real or personal, as shall have been acquired by the parties jointly during their marriage, whether the title thereto be in either or both of said parties, the *court shall make such division between the parties respectively as may appear just and reasonable*, by a division of the property in kind, or by setting the same apart to one of the parties, and requiring the other thereof to pay such sum as may be just and proper to effect a fair and just division thereof. . . .'

"*The quoted proviso is not permissive, but lays a mandatory duty upon the trial court.* The origin, nature and purpose of the provision have been reiterated so often citation and discussion of cases scarcely is required, other than for purposes of comparison, and in opposition to the Federal court's interpretation of Oklahoma law in this instance.

"The following decisions unequivocally establish Oklahoma law governing the nature and extent of a wife's interest in property jointly acquired during coverture. *Property acquired during married life as the result of industry, economy and business ability is the jointly acquired property subject to the equitable division required under the statute.* Tobin v. Tobin, 89 Okl. 12, 213 P. 884. If property has been acquired by joint effort during marriage the wife has a vested interest therein which is not forfeited even though she may be at fault. Davis v. Davis, 61 Okl. 275, 278, 161 P. 190, 193.

"*The nature of the wife's interest is similar in conception to community property of community property states, and is regarded as held by a species of*

*common ownership.* The fact record title is in the husband by reason of conveyance or contract does not destroy such joint ownership, since the plain language of the statute precludes such requirement. Thompson v. Thompson, 70 Okl. 207, 173 P. 1037. The purpose to be accomplished by equitable division is a complete severance of common title, so the portion awarded each is free from claims or domination of the other. Kupka v. Kupka, 190 Okl. 392, 124 P.2d 389. The nature of the estate subject to division is not a matter of judicial discretion. Williams v. Williams, Okl., 428 P. 2d 218. Although one spouse brings separate property to the marriage, enhanced value resulting from joint efforts, skill or funds of both working together constitutes jointly acquired property subject to division. Moyers v. Moyers, Okl., 372 P.2d 844; Williams v. Williams, supra. The statutory division may be decreed even though the court does not dissolve the marriage. Miles v. Jones, 197 Okl. 684, 173 P.2d 949. Also see Bouma v. Bouma, Okl., 439 P.2d 198. "The settled principles mentioned prescribe the Oklahoma law which must be applied here. The Commission's position was that the Federal court's interpretation of Oklahoma law should control because of identity of facts and contentions. We are cited no authority, nor know of none, which permits settled rules of law to be disregarded or nullified by application of a rule announced by a foreign jurisdiction simply to achieve a desired result.

. . . . . . .

"The opinion in Collins, supra, further relied upon Pulliam, supra. *Under Colorado law both alimony and property division may be allowed in a divorce proceeding. However, the property division is said to be grounded upon the concept that upon divorce the wife should have a share of the property. But, it is ob-*

served, *under Colorado law, an equitable award of money or property to the wife is dependent upon extent of her contribution, respective financial condition of the parties, their conduct, probable future earnings and other pertinent circumstances.* Shapiro v. Shapiro, 115 Colo. 498, 175 P.2d 386. *And, all matters of alimony and property division are within discretion of the trial court under Colorado law.* Kraus v. Kraus, 159 Colo. 331, 411 P.2d 240. *The obvious disparity between Colorado law and the specific statutory provision of our code removes all force from the statement that there is no distinction between Colorado and Oklahoma law 'sufficient to justify a different characterization of the property division.'* [7]

"In Collins, supra, it is stated that whatever rights an Oklahoma spouse may have in jointly acquired property, the traditional elements of ownership, i. e., right of control and disposition of property, descendible interest, and vested interest are lacking. See United States v. Davis, supra. *Thus, since factors which distinguish a marital division of property in satisfaction of a legal obligation from a division between co-owners are declared to be lacking, that court decreed our state court's division of property between those who are co-owners under state law did not preclude Federal courts from saying the division of jointly acquired property was a division in satisfaction of a marital obligation.*

"Neither the reasoning nor result in Collins are binding herein, nor adaptable to Oklahoma law as supporting the Commission's determination of Taxpayer's liability. Under § 1278, supra, neither the actual investiture of title, a right to make present disposition of property, nor absence of a descendible interest are controlling. *A wife has a vested interest in jointly acquired property of the marital community.*"

---

7. We think that this is an overstatement of Colorado law. Although the *amount* of the wife's share is discretionary, her *right* to share in the family estate is not subject to the exercise of the same degree of discretion by the divorce court, and we do not think that *Kraus* should be so read. Nor do we think that Colorado law differs from Oklahoma law insofar as a wife's interest in a family estate is concerned.

*Collins #3* (the appeal of Collins #1) was decided by the United States Supreme Court in 1968, and is reported in 393 U.S. 215, 89 S.Ct. 388, 21 L.Ed.2d 355. The entire opinion in that case reads:

> "The petition for a writ of certiorari is granted, the judgment is vacated and the case is remanded to the Court of Appeals for further consideration in light of the opinion of the Supreme Court of Oklahoma in Collins v. Oklahoma Tax Commission, 446 P.2d 290."

*Collins #4* was the decision by the Tenth Circuit on remand from the Supreme Court, and in Collins v. Commissioner of Internal Revenue (1969) 412 F.2d 211, it was held:

> "Pursuant to the mandate of the Supreme Court, the original judgment in this case has been vacated and the matter remanded to this court 'for further consideration in light of the opinion of the Supreme Court of Oklahoma in Collins v. Oklahoma Tax Commission,' 446 P.2d 290. Following that mandate, the case has been resubmitted and oral argument heard on the effect of the Oklahoma decision. The issues of state law finally resolved in that case make it abundantly clear that our previous attempt to discern a trend was unavailing. This opinion thus supersedes our earlier opinion reported at 388 F.2d 353, although the facts as stated therein need not be repeated here.

> .     .     .     .     .     .

> "As indicated in the former opinion, *we read* United States v. Davis, 370 U.S. 65, 82 S.Ct. 1190, 8 L.Ed.2d 335 (1962) *to require that state law be consulted in determining the nature of the disposition of property undertaken in connection with a termination of marital relations.* Just as the Court in Davis, *we seek to determine whether, under state law, the present transfer more nearly resembles a nontaxable division of property between co-owners, or whether it is a taxable transfer in exchange for the release of an independent legal obligation. Having the benefit of an interpretation of state law on this very point, we must conclude that the stock transfer operated merely to finalize the extent of the wife's vested interest in property she and her husband held under 'a species of common ownership.'*

> "The Commissioner agrees that state law is significant, but argues that a determination of whether the wife's rights in the transferred property reach the dignity of co-ownership does not depend upon the labels assigned to that interest for state tax purposes. It is contended that when the Court in Davis discussed such factors as right of control, descendable interest, and the like, federal criteria were established that must be met before the rights conferred by state law can be said to constitute co-ownership. The language of Davis will not support that interpretation. The Court merely discussed certain general characteristics of co-ownership in an attempt to determine whether the wife possessed the rights of a co-owner under state law. In so doing, *the Court determined that 'regardless of the tags, Delaware seems only to place a burden on the husband's property rather than to make the wife a part owner thereof.'* 370 U.S. at 70, 82 S.Ct. at 1193. *Collins v. Oklahoma Tax Commission proclaims that in Oklahoma the wife is made 'a part owner thereof,'* consequently, there is no need to search state law for indications of other factors that might signify the nature of the wife's property interest.

> "*In sum, we look to the law of the state, as the Supreme Court did in Davis and as this court did in Pulliam v. C. I. R., 329 F.2d 97 (1964), and conclude that the transfer of stock was a nontaxable division of property between co-owners.*"

And so, present Tenth Circuit law is that an Oklahoma wife has "a species of common ownership" in property accumulated by husband and wife during their marriage, while a Colorado wife has no

"species of common ownership." Accordingly, the Oklahoma husband owes no federal capital gain tax on property transferred from his name to that of his wife under a property settlement agreement or award, but a Colorado husband owes the federal tax.[8]

It is noteworthy that no Colorado judge participated in the decisions in *Pulliam* or *Collins*. Both of these cases were appeals from the Tax Court, and it may be that we could disagree with the Tenth Circuit's analysis of Colorado law and hope for affirmance under the doctrine that a federal trial judge is presumed to know the law of his own state.[9] However, ordinarily it. is not thought to be cricket for a trial judge to disagree with the court which reviews his decisions, and, although we do not agree with the Tenth Circuit's analysis of Colorado law, [at least as that law has developed since *Pulliam*] we are not so bold as to attempt to overrule the appellate court's decision.[10]

In explanation of our disagreement, we should comment:

*Pulliam* was decided under 1953 C.R. S. 46–1–5. That statute provided:

"When a divorce has been granted the court may make such order and decree providing for the payment of alimony and maintenance of the wife and minor children or either of them *as may be reasonable* and just, and may require security to be given for the payment of such alimony . . . or may decree a division of property."

At the time of the Imel agreement, 1963 C.R.S. 46–1–5 was in effect. That statute said:

"At the time of the issuance of a divorce decree, or at some reasonable time thereafter as may be set by the court at the time of the issuance of said divorce decree, . . . the court may make such orders, if any, as the circumstances of the case may warrant relative to division of property, in such proportions *as may be fair and equitable.*"

Of course, the Oklahoma statute uses the word "shall" while the Colorado statute uses the word "may," but we think that the statute in effect at the time of the Imel decree closely approximates the Oklahoma statute and that, when read in light of Colorado decisions and the present Colorado statute, Colorado law recognizes inchoate property interest in the wife.[11]

Colorado authority is legion, and reference to all of it would unduly extend this already overlylong opinion. However, a few cases should be mentioned. Shreyer v. Shreyer, (1944) 112 Colo. 281, 148 P.2d 1003, held that where husband and wife had jointly accumulated property which stood in the husband's name, the wife was entitled to an award of half. Shapiro v. Shapiro (1946) 115 Colo. 505, 176 P.2d 363, said that the

---

8. The glib answer that either husband owes the tax at time of the transfer or the wife will owe it later is no answer in many instances. Frequently the wife will not sell the property and it will pass in her estate. Under those circumstances, no capital gain tax would be owed by anyone. With the reciprocal wills we have here, this result is almost inevitable as to some of the stock involved.

9. Mention should be made of Hayutin v. Commissioner of Internal Revenue, T.C. Memo 1972–127. There, Judge Hoyt, a member of the Colorado bar, shares our views as to Colorado law. He seems to reason that *Collins #4* overruled *Pulliam* as well as *Collins #1, and,* taking into account the statement in *Collins #1* that Oklahoma

and Colorado law are the same, this suggestion of Judge Hoyt's may well be right.

10. Of course, in *Pulliam* the court did not have before it the emphatic divorce court findings we have here. We have difficulty in thinking that we are not bound by those findings, and we could distinguish *Pulliam* on that basis. However, we do not elect to resolve the problem in this way, although the distinction is manifest.

11. 1963 C.R.S. 46–1–13 as amended in 1971, makes the property division mandatory, and we think that the present statute, which is clearly in line with the reasoning of the Oklahoma Supreme Court, is in this regard nothing more than a legislative recognition of pre-existing Colorado law.

property settlement was "an equitable division of property based upon the fact . . . that the wife during the marriage, in addition to the usual household duties, had performed services which contributed to defendant's business advantage." Thuet v. Thuet (1953) 128 Colo. 54, 260 P.2d 604, upheld a transfer from wife to daughter which defeated a husband's inheritance, but the court clearly recognized that a spouse has an interest in property of the marital estate which cannot be defeated by fraud on the part of the marriage partner. Whether the interest be called a resulting trust or a constructive trust or a "species of common ownership" isn't really too important, because in *Thuet* the court said:

"This court in its opinion in [Smith v. Smith, 22 Colo. 480, 46 P. 128] quoted with approval a quotation in Padfield v. Padfield, 78 Ill. 16, from Bump's note in Kerr on Fraud and Mistake, page 220, as follows:

" 'There can be no doubt of the power of a husband to dispose absolutely of his property during his life, independently of the concurrence, and exonerated from the claim of his wife, *provided the transaction is not merely colorable, and be unattended with circumstances indicative of fraud upon the rights of the wife.* If the disposition of the husband be bona fide, and no right is reserved to him, though made to defeat the right of the wife, it will be good against her.' "

Admittedly, United States National Bank of Denver v. Bartges (1950) 122 Colo. 546, 224 P.2d 658, represents the Colorado court's views on Kansas law, but we think that it is also an apt expression of Colorado law. That case says that a wife has a sufficient interest in property to prevent an attempt to deprive her of that interest by fraud. Liggett v. Liggett (1963) 152 Colo. 110, 380 P.2d 673, held that a wife's right to share in property is separate from her right to alimony and that it is not dependent upon her financial contributions or work in the husband's business. Kalcevic v. Kalcevic (1964) 156 Colo. 151, 397 P.2d 483, said that "Justice requires that the joint accumulations of a husband and wife, or property which was acquired during marriage or added to through the joint efforts of both spouses, should be considered for equitable division on termination of the marriage." Thompson v. Thompson (1971) 30 Colo. App. 57, 489 P.2d 1062 held:

"The wife first contends that the court had no jurisdiction to divide any holdings of the parties other than the jointly owned property. C.R.S.1963, 46–1–5(2), however, gives the court authority to divide all property acquired by parties during a marriage, based on the situation of the parties at the time of the decree. Therefore, the trial court had clear jurisdiction over the subject matter. Stephenson v. Stephenson, 134 Colo. 96, 299 P.2d 1095; Menor v. Menor, 154 Colo. 475, 391 P.2d 473.

"The main thrust of the wife's argument, however, is that none of the equity acquired during the marriage should be awarded to the husband since he made no capital contributions to the increase. We disagree. The record indicates that the husband paid for most of the groceries, children's clothing, and medical bills during the term of the marriage. He also paid for almost all of the girls' parochial high school tuition, provided them with automobiles, insurance on same, and paid part of a note to cover the college education of one child. In addition to these expenditures, evidence further shows that for about two years the husband lived in, managed, and performed the maintenance work on an apartment house purchased during the marriage, without compensation. He also paid for some maintenance materials without full reimbursement.

"We hold that it was proper for the trial court to consider contributions of parties to the increase in or accumula-

tion of assets by means other than direct contribution of capital. See Shapiro v. Shapiro, 115 Colo. 505, 176 P.2d 363. Obviously, the husband's expenditures and labor enabled the wife to invest a considerable percentage of her income and should be considered as contributions to the increase in their joint, and her several, property.

"We do not find it objectionable that an exact dollar amount of the husband's contribution cannot be determined from the testimony as it is not a prerequisite to a fair and equitable division of property that such distribution be made in exact proportion to contribution of funds. See Schrader v. Schrader, 156 Colo. 521, 400 P.2d 675.

"The wife argues that, where the husband has a common-law and statutory duty to support his family under C.R. S.1963, 43–1–1, and Poole v. People, 24 Colo. 510, 52 P. 1025, the principles regarding contribution and property division as set forth in *Shapiro* and *Schrader, supra,* are not available to the husband. We do not agree.

"Modern legal theory and statute have placed women on an equal footing with men regarding their rights to hold and manage property. C.R.S. 1963, 90–2–3; White v. Bower, 56 Colo. 575, 136 P. 1053. Accordingly, they may sue and be sued in their own names, C.R.C.P. 17(b), and have been afforded an ever increasing parity in employment, civil rights, and other legal relationships, not requiring further citation here. We find no statutory or common-law authority which would require the application of a different set of standards to the treatment of a husband's non-capital contributions to assets acquired during marriage than would be applied to a wife's contribution." [12]

In their briefs, counsel differ sharply on the impact of Kraus v. Kraus (1966) 159 Colo. 331, 411 P.2d 240, and they differ even more strongly on the effect of the interpretation of that case by the Tenth Circuit and the Oklahoma Supreme Court. We do not read *Kraus* to modify the Colorado rule in any way, and even if it did, later cases ignore *Kraus.* We read *Kraus* to hold that a property division is based on many factors, and that one factor which must be ascertained is whether the wife "has contributed to or in some manner aided in the accumulation or preservation of the assets sought to be divided." Of course, the nature and extent of the contribution must be considered, but it would be unworkable to say that the precise dollar value of the contribution must be ascertained by some appraisal device. *Kraus* simply acknowledges the necessity for considering the nature of the contribution, just as we say that wives of business executives, professional men and salesmen contribute as much to the family estate by gracious entertaining as do wives of small merchants who clerk in the family store—albeit title to the store stands in the husband's name. And we all know that the frugal wife of the working man contributes to the accumulation of family assets. There is no way to feed into a computer data which will determine a dollar value of a wife's contributions, and the property law to be applied cannot rest on such an impossible computation.

We have difficulty in defining the exact nature of a Colorado wife's interest in the marital property. Certainly, it is not one which requires that she join in a conveyance of property standing in her husband's name, but we think that under Colorado law she has the "species of common ownership" recognized by the Tenth Circuit in *Collins #4* as existent under Oklahoma law.[13] This was defi-

---

12. Thompson v. Thompson anticipates the ruling in Frontiero v. Richardson (1973) 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 and the philosophy of that case may require rethinking of the whole problem.

13. It may be that McCombs v. Commissioner of Internal Revenue (1968) 397 F.2d 4, represents a later Tenth Circuit view of Colorado law. There, the shoe was on the other foot, and husband claimed that periodic pay-

nitely established in the Collins litigation by the fortuitous circumstance of the companion state court litigation coupled with the Supreme Court's remand to the Tenth Circuit. We do not have that fortuitous circumstance here, but we do have available to us a method by which we may determine exactly what Colorado law is when a husband transfers property to a wife under a property settlement agreement. We are confronted with a question of major importance to Colorado citizens, and it will be of benefit to the citizens of this state and to the bar of this state if we can obtain a definitive statement of Colorado property law applicable to this federal income question. Colorado Appellate Rule 21.1 affords an avenue which permits the accomplishment of this purpose. That rule provides:

> "The Supreme Court may answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, or a United States District Court, when requested by the certifying court, if there is involved in any proceeding before it questions of law of this state which may be determinative of the cause when pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court."

Our research has disclosed no case, and counsel have called our attention to no case in which the question was squarely presented to the Colorado Supreme Court, and, in light of the difference between our interpretation of present Colorado law and the Tenth Circuit's interpretation of earlier Colorado law, the question attached to this opinion is certified to the Colorado Supreme Court for its determination.

## CERTIFICATION OF QUESTION UNDER THE PROVISIONS OF COLORADO APPELLATE RULE 23.1

On its own motion, the United States District Court for the District of Colorado, certifies to the Supreme Court of Colorado the following question which probably will be determinative of this case. No clearly controlling precedent has been found in the decisions of the Colorado Supreme Court. The statement of facts relevant to the question and the nature of the controversy in which the question arose appear from the memorandum opinion attached hereto. The opinion is unusually long because of the hope that its length will explain the precise nature of and the phraseology of the question asked.

### QUESTION

When, under 1963 C.R.S. 46–1–5 [or under 1963 C.R.S. 46–1–13 as amended in 1971]

> (a) a property settlement agreement is entered into providing for a transfer of property from husband to wife in acknowledgment of the wife's contribution to the accumulation of the marital estate, or,
>
> (b) a decree of the divorce court requires such transfer because of the wife's contributions to the accumulation of the family estate, and,
>
> (c) the transfer is not made in satisfaction of the husband's obligation for support,

is the transfer a taxable event for purposes of federal income taxation?

Paraphrasing the language of controlling cases, the same question may be stated:

Under Colorado law, is such a transfer a recognition of a "species of common ownership" of the marital estate by

---

ments made under a property settlement were available to him as deductions. In holding that they were not, the Court may suggest the existence of a property interest in the wife where there was a "substantial contribution to the accumulation of the assets of the marital estate." The Court pointed out that the wife was to receive no

alimony [as is the case with Mrs. Imel] and it stressed that "The amount was arrived at solely on the basis of the value of the marital estate accumulated through the joint efforts of a husband and wife, without reference to any obligation to pay alimony or support money." The divorce court's findings in Imel say just about the same thing.

the wife resembling a division of property between co-owners, or does the transfer more closely resemble a conveyance by the husband for the release of an independent obligation owed by him to the wife?

[See, United States v. Davis (1962) 370 U.S. 65, 82 S.Ct. 1190, 8 L.Ed.2d 335, Pulliam v. Commissioner of Internal Revenue (1964) 10 Cir., 329 F.2d 97, and Collins v. Commissioner of Internal Revenue (1969) 10 Cir., 412 F. 2d 211.]

Fees and costs in the Colorado Supreme Court shall be paid by plaintiff.

## SUPPLEMENTAL OPINION FOLLOWING ANSWERS TO CERTIFIED QUESTIONS

The Colorado Supreme Court answered the certified questions in Re Questions Submitted by the United States District Court for the District of Colorado Concerning C.R.S.1963, 46–1–5 and 1971 Perm.Supp. C.R.S.1963, 46–1–13 in Civil Action No. 26089 entitled Ray C. Imel v. United States of America, (1974) Colo., 517 P.2d 1331. The Court answered:

"We hold that at the time the divorce action was filed there vested in the wife her interest in the property in the name of the husband. . . . *We answer in the affirmative that, under Colorado law, the transfer involved here was a recognition of a 'species of common ownership' of the marital estate by the wife resembling a division of property between co-owners. We answer in the negative whether the transfer more closely resembles a conveyance by the husband for the release of an independent obligation owed by him to the wife* . . . . (A)t the time of the filing of the dissolution action in which the division of property will be later determined, a vesting takes place. This interest which has vested is inchoate only in the sense that, prior to the division, the property to be transferred to the wife has not yet been determined. Upon and after the filing of the action, the rights of the wife are analogous to those of a wife who can establish a resulting trust, irrespective of a divorce action, in the property of the husband. We use this analogy because we are not saying that after the filing of the divorce action it is necessary for both spouses to enter into the conveyance of property held in the name of only one. Upon the filing of the action the court may protect this vested interest of the wife pending the division order, even though the property to be transferred to her has not as yet been determined." [Emphasis added]

After receipt of the opinion of the Colorado Supreme Court, the government asked and was granted leave to file a brief in which it argued that despite the Colorado Court's pronouncement of Colorado law, the capital gains tax paid by Imel was due and owed. As in the last analysis it must, the government begrudgingly conceded at time of oral argument of its brief that what it here really seeks is to have the United States Court of Appeals for the Tenth Circuit overrule *Collins # 4* instead of modifying *Pulliam* to comport with *Collins # 4* and now settled Colorado law.

The government argues that United States v. Davis (1962) 370 U.S. 65, 82 S.Ct. 1190, 8 L.Ed.2d 335, proclaims a policy which requires imposition of the tax, but to adopt this argument would require us to shut our eyes to Collins v. Commissioner of Internal Revenue (1968) 393 U.S. 215, 89 S.Ct. 388, 21 L.Ed.2d 355 [Collins # 3] and to Collins v. Commissioner of Internal Revenue (1969) 10 Cir. 412 F.2d 211 [Collins # 4]. As Judge Hill said:

"Having the benefit of an interpretation of state law on this very point, we must conclude that the stock transfer operated merely to finalize the extent of the wife's vested interest in property she and her husband held under a 'species of common ownership.'"

United States v. Davis holds no more than that state law must be consulted to determine whether the divorce-forced

transfer is in recognition of property rights or whether it is to obtain a release of an independent obligation. The Colorado Supreme Court has held that under Colorado law it is the former rather than the latter.

Next, the government argues that the Colorado Supreme Court doesn't really understand Colorado law, and, in any event, "Since the opinion of the Colorado Supreme Court in this instance is advisory only, this court is not bound by the opinion." We disagree, and remain firmly convinced that Colorado Supreme Court decisions constitute the last word on Colorado law. In fairness to the government, its contention was advanced before the decision in Lehman Brothers v. Schein, (1974) — U.S. —, 94 S.Ct. 1741, 40 L.Ed.2d 215, 42 L.W. 4603, which is in accord with earlier lower court cases passing upon the effect of decisions rendered under a certification procedure. National Education Association v. Lee County Board of Public Instruction (1972) 5 Cir., 467 F.2d 447, Allen v. Estate of Carman (1973) 5 Cir., 486 F.2d 490. The manifest attractions of state court certification rules would be destroyed if it were to be held that a federal court will accept determinations of state law only when it suits the federal court's pleasure, and our utilization of the rule was to obtain a binding—not an advisory—opinion from the Colorado Supreme Court.

Then, says the government, for some obscure reason, the fact that husband and wife might reconcile after the filing of a divorce action means that there can't really be any vesting of a property interest in the wife until the decree enters. The government's argument is difficult to follow, but it seems to ignore the fact that vesting and revesting have long been known to the common law which recognizes base, conditional or determinable fees and possbilities of reverter. See, 26 C.J.S. Deeds § 110, p. 920, and 28 Am.Jur.2d Estates, § 182, p. 319. Determinable fees and possibilities

of reverter are a part of Colorado law, City of Idaho Springs v. Golden Savings and Loan Association, (1971) 29 Colo. App. 119, 480 P.2d 847, and so are resulting trusts, Thuet v. Thuet, (1953) 128 Colo. 54, 260 P.2d 604, U. S. National Bank v. Bartges, (1950) 120 Colo. 317, 210 P.2d 600.

Finally, perhaps in the interests of chivalry, the government pleads that to hold that the husband doesn't owe the tax might possibly result in a future tax obligation on the part of the wife for the accrued capital gain if she later sells. the property, the interest in which she earned during the marriage. In addition to the chivalrous motivation, unless the husband is taxed now, there is the strong probability in this case that the property will not be sold by the wife, and no one will ever owe any capital gains tax—an eventuality viscerally abhorrent to any dedicated tax collector. This claimed tax liability would not exist in Oklahoma under *Collins # 4;* it would not exist in any community property state, and no tax is due under *Davis* when the transfer is not in consideration of the release of an independent obligation. Moreover, absent the marital splitup, if the parties held the property until death, an estate tax would have been owed, but there would be no capital gains tax. The government's chivalry is muted by its insistence on a present tax bite claimed only because of the Imels' domestic problems, and we reject the goverment's paternal assertion that it wants to collect a tax only because of its desire to protect the wife rather than admit to a valiant last ditch effort to collect a capital gains tax when, under Colorado law, there has been no taxable event.

Even with Pulliam v. Commissioner of Internal Revenue in mind, I think that *Davis* and *Collins # 4,* when coupled with the Colorado Supreme Court's answers to the certified questions, mandate that judgment here enter in favor of plaintiff, and it shall so enter.