Argued and submitted November 28,
affirmed as modified December 31, 1979

In the Matter of the
Marriage of
PRICE,
*Appellant,*
*and*
PRICE,
*Respondent-Cross-Appellant.*

(No. D12-143, CA 14525)

607 P2d 756

Ira L. Gottlieb, Portland, argued the cause and filed the briefs for appellant.

Douglas L. Minson, Hillsboro, argued the cause and filed the briefs for respondent-cross-appellant.

Before Tanzer, Presiding Judge, and Thornton and Campbell, Judges.

CAMPBELL, J.

**CAMPBELL, J.**

The husband has appealed from a decree dissolving the parties' marriage. He contends that the trial court erred in awarding the wife (1) "one-quarter of the husband's interest in an agency agreement" and (2) the sum of "$300 per month for 15 years as property division." The wife has cross-appealed. She contends that the decree should be modified to award her (1) a lump sum judgment of $250,000 and (2) permanent spousal support in a reasonable amount. We modify the decree, but not in the exact manner requested by either party.

At the time of the trial the parties had been married 23 years. The husband was 44 years of age. The wife was 43. Three children were born of the marriage; neither custody nor child support is an issue.[1]

At the time of the marriage the wife had finished her first year of college. She did not return to school. During the first four years of the marriage the husband was employed on his family's wheat ranch near Walla Walla, Washington. The parties then moved to California where the husband attended a photography school for a period of two years. The wife worked to help the husband finance schooling. During the balance of the marriage the husband was employed in photography laboratories in Montana, Ohio and Oregon. At the time of the trial his gross annual salary was $9,600. His take-home pay for a four-week period was approximately $572 with an additional $100 expense allowance. The wife worked off and on at semi-skilled jobs. At the time of trial she was working full-time in a civil service position for Washington County with a take-home pay of $512 per month. The wife's health is good.

---

[1] The oldest child is emancipated. The other two children were 19 and 20 years of age and attend school in Canada. They are largely self-sufficient from part-time employment and gifts from their late grandfather. The mother did not seek child support.

In May 1978 the husband's father died. As a result of the father's death the husband and his sister became the sole owners of an undivided one-half interest in the Walla Walla wheat ranch.[2] The other undivided one-half interest was devised by the father in trust. The Baker-Boyer National Bank of Walla Walla is the trustee. The husband and his sister are to share the income from the trust equally for life. The wheat ranch contains 1,237 acres and was appraised for the sum of $1,000,000.

The taxes due the state and federal governments on the father's estate total $234,000. There was no testimony as to the expenses of administration. The estate has $124,000 of liquid assets. The projected net income[3] of the 1978 crops for the entire ranch was $56,000. The estate is entitled to one-half or $28,000 of the crop money. The husband and his sister are entitled to the other half. The life insurance proceeds in the amount of $74,000 were payable directly to the husband and his sister in equal shares. The husband has already received $20,000 of the life insurance money.[4] It appears that the estate will be short $82,000 cash to pay the estate taxes.

The husband and his sister have executed an "agency" agreement with Baker-Boyer National Bank. The agreement was not received in evidence. There is no testimony as to the details of the agreement. We infer from the sparse record that the husband and his sister have given the bank the power to manage the undivided one-half interest that they own in fee in the wheat ranch. Evidently they have also transferred to the bank under the same agreement the 1978 crop and the balance of the life insurance proceeds.

---

[2] In 1963 the husband's grandmother died. She devised this undivided one-half interest to the husband and his sister subject to the life estate of their father.

[3] This case was tried on November 22, 1978. The crops had been harvested but not sold.

[4] The husband testified that he took $17,000 of the insurance money and made a down payment on a residence on East Burnside in Portland.

The trial court found that the husband's interest in the agency agreement was $281,000. He computed this figure by adding: land valued at $250,000; a share of the 1978 crop valued at $14,000; and the balance of the life insurance, $17,000.

The husband claims that the trial court erred in entering the two following provisions of the decree:

"As part of a just and proper settlement of the property rights of the parties, [wife] is hereby awarded a one-fourth interest in the [husband's] interest in the Agency as constituted [on] the date of hearing, November 22, 1978.

"[Husband] shall pay to [wife] the sum of $300 per month not as spousal support, but as a portion of the settlement of the property rights of the parties, beginning the month following execution of this Decree; these payments shall be made on or before the 10th day of each and every month for a period of 15 years."

It is evident that the trial court wanted to award the wife an interest in the agency agreement equal to approximately $70,000 plus a further property award in the amount of $54,000, the latter sum to be paid in monthly installments of $300 for a period of 15 years.

The trial court also awarded the wife the equity in the parties' residence in Aloha. The husband was awarded the equity in a residence that he had purchased on East Burnside in Portland. The wife was given a judgment of $1,600 for attorney fees and costs. Each party was awarded the personal property in his or her possession. It would appear that the wife received the "long half" of the parties' assets described in this paragraph, but the husband has not made an issue of it on appeal.

The husband claims that the basis of the $54,000 award "is that the husband will be receiving income from the ranch under the testamentary trust of the father." The husband cannot invade the corpus of the trust. There is no direct evidence of the value of the trust. We do know that its gross income for 1978 as to

the husband would be approximately $14,000. There was testimony that 1978 was an average year. The accredited rural appraisal in the record states that the ranch has a proven annual wheat yield of 83 bushels per acre and that the average annual net income based on $3.50 per bushel is $50,091.

In *Slauson and Slauson,* 29 Or App 177, at 183, 562 P2d 604, at 607 (1977), we said:

> "Similarly in dividing the property the dissolution decree should seek to disentangle the parties' financial affairs and make them free from each other's interference. The friction resulting from the unsuccessful marriage partnership almost inevitably makes continued business association untenable. *See Pence and Pence,* 25 Or App 667, 550 P2d 754 (1976); *Adams and Adams,* 22 Or App 287, 538 P2d 954 (1975)."

In this case the financial affairs of the parties should be disentangled. The two above provisions of the decree awarding the wife one-quarter of the husband's interest in the agency agreement and a property settlement of $300 per month for 15 years will be set aside. In lieu of said provisions we award the wife a judgment against the husband for the sum of $124,000. Said judgment is a property settlement award and is not spousal support. The judgment shall bear interest at the rate of nine percent per annum.[5] It shall be payable at the rate of not less than $7,500 per year plus accrued interest from January 10, 1980. The first annual payment shall be made on January 10, 1981, and a like payment shall be made on or before the 10th day of each January thereafter until the principal and interest is paid in full.

---

[5] As a general rule this court has allowed interest in marriage dissolution cases when payment of the property settlement award extends beyond one year. *von Ofenheim and von Ofenheim,* 40 Or App 865, 596 P2d 1007 (1979); *Hathaway and Hathaway,* 39 Or App 847, 593 P2d 528 (1979); *Sellers and Sellers,* 39 Or App 647, 593 P2d 1191 (1979); *Lee and Lee,* 32 Or App 303, 573 P2d 1274 (1978); *McCoy and McCoy,* 28 Or App 919, 562 P2d 207 (1977).

The delay of the first payment on the above judgment until January 10, 1981, will give the husband the opportunity to make funds available to pay the estate taxes on his father's estate.

In view of the property settlement award in this case, the wife is not entitled to spousal support. *Grove and Grove,* 280 Or 341, 571 P2d 477 (1977); *Kitson and Kitson,* 17 Or App 648, 523 P2d 575, *rev den* (1974).

Affirmed as modified. No costs to either party.