Argued and submitted February 25, affirmed as modified
and remanded May 26, reconsiderations denied July 16,
petitions for review allowed August 25, 1981 (291 Or 504)

In the Matter of the Marriage of

# ENGLE,
*Appellant - Cross-Respondent,*
*and*
# ENGLE,
*Respondent - Cross-Appellant.*

(No. D79-0274, CA 18436)

629 P2d 397

J. W. Walton, Corvallis, argued the cause for appellant - cross-respondent. With him on the briefs was Ringo, Walton, Eves & Gardner, P.C., Corvallis.

Thomas Garrison, Roseburg, argued the cause for respondent - cross-appellant. With him on the brief was Garrison & Garrison, Roseburg.

Before Gillette, Presiding Judge, and Roberts and Young, Judges.

YOUNG, J.

### YOUNG, J.

The husband appeals from that portion of the decree of dissolution dividing the property of the parties. On cross-appeal, the wife also challenges the property division and argues the trial court should have awarded her spousal support and a greater sum in payment of her litigation expenses.

The parties were married in 1953 and separated in 1977. At the time of the dissolution, husband was 62 years old and wife was 60. Husband has been successfully engaged in ranching and logging for many years. He plans to retire at age 65 if he can. Wife has not been gainfully employed during the last 25 years. Her primary role during the marriage was that of a homemaker. The trial judge specifically found that she is entitled to the presumption of equal contribution to the acquisition of marital assets provided by ORS 107.105(1) (e).[1]

The fair market value of the marital assets is roughly two million dollars. The husband's logging and ranching business is conducted through Morgan & Engle, Inc., an Oregon corporation formed in 1957. Husband owns one half of the outstanding corporate stock; his half-brother owns the other half. Husband also has a one-half interest in a trust as co-trustee and as income beneficiary and remainderman. The trust property consists of 1,422 acres of ranch and timber land. The timber on the trust property, however, is owned separately from the land. Husband has a one-fourth interest in the timber. Additionally, the husband has a one-half interest in the "Dysert property" and a one-third interest in the "Jones property," both of which are tracts of ranch and timber lands adjoining the trust lands. Finally, the husband's separate property includes a one-fourth interest in industrial property located in Oakland, Oregon. The wife owns a rental home in Roseburg. The parties hold title to their residence and accompanying acreage as tenants by the entireties. There are various items of personal property.

The trial court valued and ordered distribution of the property as follows:

---

[1] Quoted, *infra,* at page 12.

| TO THE HUSBAND: | | VALUE |
|---|---|---|
| One half of husband's stock in Morgan & Engle, Inc. | | $450,000 |
| 1/4 interest in timber on trust lands | | 472,000 |
| 1/2 interest in trust (land) | | 200,000 |
| 1/2 interest in Dysert property | | 25,000 |
| 1/3 interest in Jones property | | 15,000 |
| 1/4 interest in Oakland property, less loan for purchase | | 48,250 |
| Personal bank account | | 3,000 |
| IRA account | | 7,500 |
| First Far West stock | | 400 |
| | TOTAL | $1,221,650 |

| TO THE WIFE: | | |
|---|---|---|
| One half of husband's stock in Morgan & Engle, Inc. | | $450,000 |
| Home and nine acres | | 90,000 |
| Rental house in Roseburg | | 25,000 |
| Misc. household items | | 10,000 |
| 1979 Chevrolet | | 5,200 |
| Personal bank account | | 500 |
| | TOTAL | $580,700 |

The trial court additionally awarded the wife a judgment against the husband for $180,000, payable over three years, together with 10 percent interest on the unpaid balance until paid.

The husband's primary concern is with the tax consequences of the trial court's distribution. The court may consider tax consequences when determining a proper division of property. ORS 107.105(2). The husband's principal problem is that he potentially must satisfy three substantial cash obligations. First, it appears that the trial court awarded him his interest in the timber on the trust property in light of a sale of that asset contemplated by the owners. There was testimony that the sale would result in an immediate tax obligation to husband in the amount of $156,000.[2] Second, husband is required under the decree to

---

[2] The husband has used an effective tax rate of 33 1/3 percent on combined state and federal taxation of capital gains. The wife does not dispute the figure or the testimony from which it was derived.

pay $180,000 to wife within three years. Third, husband argues that the forced transfer of his Morgan & Engle stock to his wife will, under *United States v. Davis,* 370 US 65, 82 S Ct 1190, 8 L Ed 2d 335 (1962), constitute a taxable event, creating another liability of approximately $142,000 in state and federal capital gains tax. He contends this state of affairs will force him to liquidate his holdings quickly, causing him to have to recognize more capital gains on the appreciated value of the assets and reducing the value of the distribution to him, making it less than that made to the wife.[3] To avoid this problem, the husband would have us award the wife a judgment of $500,000, payable over 15 years in lieu of the stock transfer and the present lump sum award.

---

[3] The husband supports his argument with the following chart providing a net value analysis of the distribution:

### Husband

| | Basis | Value | Tax on Gain | Net Value |
|---|---|---|---|---|
| IRA | -0- | 7,500 | -0- | 7,500 |
| First Far West | 400 | 400 | -0- | 400 |
| Oakland property | 48,250 | 48,250 | -0- | 48,250 |
| Bank account | 3,000 | 3,000 | -0- | 3,000 |
| Dysert | 1,500 | 25,000 | 7,750 | 17,250 |
| Jones | 500 | 15,000 | 4,780 | 10,220 |
| Trust property Timber | -0- | 472,000 | 156,000 | 316,000 |
| Trust Property Land | 10,000 | 200,000 | 62,700 | 137,300 |
| Morgan & Engle | 18,750 | 450,000 | 142,300 | 307,700 |
| | | 1,019,150 | | |
| | | | | 847,620 |
| | | | Less judgment | 180,000 |
| | | | | 667,620 |
| | | Less tax on transfer of Morgan & Engle stock | | 142,300 |
| | | | | 525,320 |

### Wife

| | Basis | Value | Tax on Gain | Net Value |
|---|---|---|---|---|
| House and 9 acres | 23,000 | 90,000 | 22,110 | 67,890 |
| Household items | 10,000 | 10,000 | -0- | 10,000 |
| Rental house | -0- | 25,000 | 8,250 | 16,750 |
| Chevrolet | 5,200 | 5,200 | -0- | 5,200 |
| Bank acct. (wife) | 500 | 500 | -0- | 500 |
| Morgan & Engle 1/4 Common stock | 450,000 | 450,000 | -0- | 450,000 |
| Lump sum award | 180,000 | 180,000 | -0- | 180,000 |
| | | 760,700 | | 730,340 |

The wife argues that the stock transfer is not a taxable event. Relying on a line of cases decided by the courts of the United States Tenth Circuit, she asserts that the transfer, under Oregon law, is more like a division of jointly owned property, which under *Davis* is not a taxable event. She argues that she is the one who will receive the short end of the distribution if we affirm the trial court's decree.

Both parties agree that the key issue affecting the property division is whether the Oregon law on marital ownership brings the transfer of husband's corporate stock within the rule of *United States v. Davis, supra.* We turn to that question.

## THE *DAVIS* DECISION

In *Davis* the taxpayer and his wife entered into a property settlement and separation agreement which provided for support payments to the wife and child and for the transfer of personal property to the wife. The property transferred was separately owned by the taxpayer, subject to the wife's marital rights under Delaware law. The taxpayer agreed to transfer to his wife, among other things, corporate stock which had appreciated in value. The wife agreed to accept the stock in satisfaction of any and all claims and rights against the husband, including dower and descent. Their agreement was incorporated into the divorce decree. The issue presented to the Supreme Court was whether the husband realized taxable gain on the difference between his basis in the stock and its fair market value at the time of transfer.

Prior to *Davis,* it was fairly well established that a property settlement in common law states was a taxable transaction; the major issue was whether the amount of gain realized could be ascertained.[4] In *Davis,* however, the taxpayer argued that the stock transfer pursuant to the property settlement was not even a taxable event. The court noted that the controlling statutory language, calling for recognition of gains from dealings in property upon "sale or other disposition,"[5] is too general to determine conclusively whether a taxable event occurs.

---

[4] Compare *Commissioner v. Halliwell,* 131 F2d 642 (2d Cir 1942), and *Commissioner v. Mesta,* 123 F2d 986 (3d Cir 1941), with *Davis v. United States,* 287 F2d 168 (Ct Cl 1961), and *Marshman v. Commissioner,* 279 F2d 27 (6th Cir 1960).

[5] *See* Internal Revenue Code of 1954 §§ 61(a), 1001, 1002.

The parties in *Davis* argued their respective cases by way of analogy. The taxpayer asserted his disposition of the stock was comparable to "a non-taxable division of property between two co-owners." The United States contended the transfer more closely resembled "a taxable transfer of property in exchange for the release of an independent legal obligation." 370 US at 69, 8 L Ed 2d at 340-41. The Supreme Court construed the transaction in the light of Delaware law and, in one breath, rejected the taxpayer's analogy and accepted the government's:

"* * * [T]he inchoate rights granted a wife in her husband's property by the Delaware law do not even remotely reach the dignity of co-ownership. The wife has no interest—passive or active—over the management or disposition of her husband's personal property. Her rights are not descendable [sic] and she must survive him to share in his intestate estate. Upon dissolution of the marriage she shares in the property only to such extent as the court deems 'reasonable.' What is 'reasonable' might be ascertained independently of the extent of the husband's property by such criteria as the wife's financial condition, her needs in relation to her accustomed station in life, her age and health, the number of children and their ages, and the earning capacity of the husband.

"This is not to say it would be completely illogical to consider the shearing off of the wife's rights in her husband's property as a division of that property, but we believe the contrary to be the more reasonable construction. Regardless of the tags, Delaware seems only to place a burden on the husband's property rather than to make the wife a part owner thereof. In the present context the rights of succession and reasonable share do not differ significantly from the husband's obligations of support and alimony. They all partake more of a personal liability of the husband than a property interest of the wife. The effectuation of these marital rights may ultimately result in the ownership of some of the husband's property as it did here, but certainly this happenstance does not equate the transaction with a division of property by co-owners. Although admittedly such a view may permit different tax treatment among the several States, this Court in the past has not ignored the differing effects on the federal taxing scheme of substantive differences between community property and common-law systems." 370 US at 70-71. (Citations omitted.)

The court held the transfer was a taxable event. It also presumed that the parties acted at arm's length and held that the amount realized by the husband was equal to the fair market value of the stock at the date of transfer.

## THE TENTH CIRCUIT DECISIONS

By noting the possibility of different tax treatment between common law and community property jurisdictions, the Supreme Court indicated the general applicability of its holding in *Davis* to common law jurisdictions. The neat division between common law and community property concepts, however, was quickly eliminated. The principal cases are the *Collins* decisions,[6] applying Oklahoma law, and *Imel v. United States,* 375 F Supp 1102 (D Colo 1974), *affirmed* 523 F2d 853 (10th Cir 1975), applying Colorado law.

In the *Collins* cases the taxpayer had transferred separately owned shares of appreciated corporate stock to his former wife under a property settlement agreement incorporated into a decree dissolving their marriage. The taxpayer reported no gain; both state and federal tax authorities notified him of deficiency assessments. Notwithstanding Oklahoma's alignment as a common law jurisdiction, the taxpayer, as in *Davis,* argued that the disposition was analogous to a nontaxable division of property by co-owners. He distinguished *Davis* on the basis of an Oklahoma statute which *requires* the divorce court to make a division of the parties' jointly acquired property. The statute, 12 OS 1961, § 1278, provides in pertinent part:

"* * * As to such property, whether real or personal, as shall have been acquired by the parties jointly during their marriage, whether the title thereto be in either or both of said parties, the court shall make such division between the parties respectively as may appear just and reasonable, by a division of the property in kind, or by setting the same apart to one of the parties, and requiring the other thereof to pay such sum as may be just and proper to effect a fair and just division thereof. * * *"

The taxpayer contended that the statute and the Oklahoma Supreme Court decisions interpreting it give

---

[6] *Collins v. C.I.R.,* 388 F2d 353 (10th Cir 1968) *(Collins I), Collins v. Oklahoma Tax Commission,* 446 P2d 290 (Okla 1968) *(Collins II), Collins v. Commissioner,* 393 US 355, 89 S Ct 388, 21 L Ed 2d 355 (1968) *(Collins III),* and *Collins v. C.I.R.,* 412 F2d 211 (10th Cir 1969) *(Collins IV).*

"* * * each spouse a vested interest in property jointly acquired during their marriage and [that] the extent of that vested interest shall be determined by the court in any action brought to terminate the marriage relationship." 388 F 2d at 354.

In *Collins I* the Tenth Circuit Court of Appeals held the stock transfer to be a taxable event for purposes of federal income taxation. The court acknowledged that Oklahoma decisions recognized jointly acquired property as a "species of common ownership," that a division of property is to be considered separately from the issue of alimony, that a division is required, and that the division is to be made primarily on the basis of the efforts of the respective parties, as opposed to their needs. The court also observed, however, that the wife had no vested interest in the property prior to divorce, and that whatever interest she does have was not descendible. The court found those factors determinative, saying:

"* * * These [traditional ownership] rights such as descendible interest, right to control and disposition of property and vested interest are set out by the Supreme Court in *United States v. Davis,* as factors that distinguish a marital division in satisfaction of a legal obligation from a division between co-owners. Since these traditional elements of co-ownership are lacking the fact that in making *a decision the state courts speak as though they were dividing property between co-owners does not prevent the federal courts from saying that for tax purposes the division was in satisfaction of a marital obligation and thus taxable."* (Emphasis added.) 388 F 2d at 357-58.

The Oklahoma Supreme Court considered the identical issue for purposes of state taxation in *Collins II.* The court held it was not bound by *Collins I* and reversed the state's assessment of the tax. It emphasized that, under Oklahoma law,

"* * * [t]he nature of the wife's interest is similar in conception to community property of community property states, and is regarded as held by a species of common ownership." 446 P2d at 295.

The court rejected the Tenth Circuit's analysis and distinguished *Davis,* saying:

"* * * The positive right extended under § 1278 certainly is vested in the wife, to exercise or not as she may

see fit in event of marital discord. Because the right is not subject to descent does nothing to destroy the fixed and vested nature of that right when a divorce proceeding provides basis for assertion of the right granted specifically by statute.

"* * * * *

"* * * The complete dissimilarity between the Delaware statute and § 1278, supra, which provides for alimony, custody and child support, reservation of the wife's separate property, and division of jointly acquired property sufficiently distinguishes the premise in Davis, viz: Delaware law only places a burden upon the husband's property rather than making the wife a co-owner. * * * An agreement to accept a division of property when a specific statutory proviso already has guaranteed an equitable division shall be made without any such limitations as are recited in *Davis, supra,* cannot be categorized as an exchange for release of an independent legal obligation." 446 P2d at 296.

The United States Supreme Court granted review *(Collins III)* of the Tenth Circuit's decision *(Collins I)* and reversed *per curiam,* directing the Court of Appeals to reconsider its decision in light of the Oklahoma decision. In *Collins IV* the Court of Appeals simply deferred to state law and concluded the stock transfer for *federal* tax purposes was a non-taxable division of property between co-owners. The court apparently abandoned its previous position that state law merely affected but did not control the federal tax question.

A similar question was presented in *Imel v. United States, supra.* The United States District Court for the District of Colorado certified a question to the Supreme Court of Colorado, asking whether, under Colorado law, a transfer of property pursuant to divorce from husband to wife in acknowledgment of the wife's contribution to the accumulation of the marital estate and not in satisfaction of an obligation for support is a taxable event for purposes of federal income taxation. In other words:

"Under Colorado law, is such a transfer a recognition of a 'species of common ownership' of the marital estate by the wife resembling a division of property between co-owners, or does the transfer more closely resemble a conveyance by the husband for the release of an independent

obligation owed by him to the wife?" 375 F Supp at 1116-17.

Because of its limited jurisdiction, the Colorado court declined to answer the federal taxation question, but it did hold that the transfer "was a recognition of a 'species of common ownership' of the marital estate by the wife resembling a division of property between co-owners." *In Re Questions Submitted by United States Dist. Ct.,* 184 Col 1, 517 P2d 1331, 1334 (1974). The court was careful to explain that during marriage the husband's property is free from any vested interest of the wife, her interest being completely inchoate. The court held, however, that her interest vests *at the time the divorce action is filed.* In light of these statements, the district court followed *Collins IV* and ruled the transfer nontaxable. *Imel v. United States, supra.*[7]

DIVISION OF MARITAL PROPERTY IN OREGON

Before deciding the probable tax consequences of a stock transfer in this case, we must first characterize the legal effect of a division of marital property in Oregon. ORS 107.105 provides in part:

"(1)  Whenever the court grants a decree of * * * dissolution of marriage * * * it has power further to decree as follows:

"* * * * *

"(e)  For the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances. The court shall view the contribution of a spouse as a homemaker in the contribution of marital assets. There is a rebuttable presumption that both spouses have contributed equally to the acquisition of property during their marriage * * *."

Both parties contend this statute is "stronger" than Colorado's or Oklahoma's. The statute does require the court to take into account the contributions of each party to acquisition of marital assets, and the presumption is that each contributes equally. The presumption, however, has been recognized as being merely one of several legal principles which limit the discretionary power of the court to make a just and proper division of property under all the circumstances. *Lemke and Lemke,* 289 Or 145, 611 P2d 295 (1980).

[7] The federal courts have noted that, for purposes of this question, Colorado and Oklahoma law are indistinguishable. *See also, Collins I.*

In *Frishkoff and Frishkoff,* 45 Or App 1033, 1040, 610 P2d 831 (1979), we listed some of the other relevant considerations, including:

> " 'The financial condition of the parties; the nature and value of their respective properties; the contribution of each to any property held by them as tenants by the entirety; the duration of the marriage; the husband's income, his earning capacity, his age, health, and ability to labor; and the wife's age, health, station and ability to earn a living.' *Nolan v. Nolan,* 20 Or App 432, 435, 532 P2d 35 (1975); quoting *Stettler v. Stettler,* 2 Or App 119, 121, 467 P2d 130 (1970)."

■  Although these other factors are to be considered in devising an equitable property division, we do not minimize the importance of the role played by the statutory presumption of equal contribution. The relevance of factors other than the parties' respective contributions derives largely from the view that property division is governed by the same considerations that pertain to the allowance of spousal support. *Johnson v. Johnson,* 245 Or 10, 419 P2d 28 (1966); *Glatt and Glatt,* 41 Or App 615, 598 P2d 1237 (1979); *Stettler v. Stettler, supra.* As a practical matter, it may be difficult to separate provisions for support and division of property and still effect a just and equitable settlement of the parties' affairs. *Grove and Grove,* 280 Or 341, 571 P2d 477 (1977). From an analytical point of view, however, the property division should, when possible, be determined independent of spousal support, considering above all the parties' contributions to acquisition of their assets. Overall equity of the dissolution can thereafter be best achieved by allowing or disallowing spousal support in light of the parties' respective property rights and any continuing need of a party. *See Kathrens and Kathrens,* 47 Or App 823, 615 P2d 1079, *rev den* (1980) (reducing award of spousal support in view of substantial cash payment to wife under the property division); ORS 107.105(1) (c) (E), (H).[8]

---

[8] The statutory scheme confirms this approach. On the one hand, ORS 107.105(1)(c)(E) directs the court to consider the parties' financial condition, resources and property rights when determining whether an award of spousal support is appropriate. ORS 107.105(1)(e) on the other hand *does not* require the court to consider spousal support when dividing property. The legislative history of ORS 107.105(1) also supports the view that spousal support and property division are distinctly different concepts. When ORS 107.105(1) was amended to

■ At the very least, the presumption provided by ORS 107.105(4)(e), if not rebutted, gives the wife a right to receive property under a decree of dissolution, or to be adequately compensated for relinquishing that right. *Haguewood and Haguewood,* 50 Or App 169, 622 P2d 1130, *rev allowed* (1981).[9] In that respect, the effect of the statute is much like that of the Oklahoma and Colorado statutes construed in *Collins* and *Imel.*

## THE APPLICATION OF *DAVIS* IN OREGON

■ The ultimate question for decision here is whether a transfer by the husband of his separately owned property is more like a division of property between co-owners than a satisfaction of an independent legal obligation. Despite the similarity between the law of this state and that considered in *Collins* and *Imel,* we conclude that, contrary to those decisions, a transfer of the kind under consideration here is analogous to a satisfaction of an independent legal obligation and the rule of *Davis* applies.

■ The *Collins* and *Imel* decisions are not immune from criticism.[10] Neither line of cases establishes a vested property right in the wife during marriage. In *Imel,* the wife's interest, though completely inchoate during marriage, was said to vest at the time the divorce action was filed; she was found by the state court to have an interest in her husband's separate property as a co-owner. The Oklahoma Supreme Court's decision in *Collins II* is much to

---

provide for the rebuttable presumption stated in subsection (e), a proposal was also submitted to include the value of domestic services in determining spousal support. The proposal was defeated because a majority of the committee felt that domestic services were relevant only to property settlement. *See* Minutes, House Committee on Judiciary 11-13 (May 9, 1977).

[9] In *Haguewood* we found that an equal division of property was appropriate and held that an award of permanent spousal support was inadequate to compensate the wife for relinquishing her right to an equal distribution. In the course of the opinion we labeled the wife's rights "property rights," a term which is inaccurate in light of this opinion. We do not intend here to alter the holding of *Haguewood.*

[10] *See generally,* Note, "Federal Taxation of Divorce Property Settlements and the Amiable Fictions of State Law," 52 Den L J 799 (1975); Comment, "Federal Tax Consequences of Property Settlements in Common Law States," 29 Maine L Rev 73 (1977); Comment, "Federal Income Tax Treatment of Gains and Losses in Divorce and Separation Property Settlements," 20 St. Louis L J 181 (1975).

the same effect when viewed in light of its later decision, *Sanditen v. Sanditen,* 496 P2d 365 (Okla 1972). There, the Oklahoma court backed away from the strong language it used in *Collins II* and held that "vesting takes place only by reason of the divorce pendency." During the marriage the wife does not have a joint interest in jointly acquired but separately held property, but merely "* * * a contingent interest which the law protects." 496 P2d at 367. The notion that the parties become co-owners of separately held property at the point in time when they decide they do not want to own anything jointly is a hard one to rationalize. A sounder position is that the spouses simply have reciprocal equitable rights to share in the marital estate. The right is a burden on the parties' separate property and is protectible by virtue of the court's power to divide all assets, however owned.

This view was shared for a brief time by the Tenth Circuit. In *Hayutin v. C.I.R.,* 508 F2d 462 (10th Cir 1975), the court, in dictum, characterized the wife's interests under Colorado law as not rising to the level of property rights. The court looked to the "true nature of the transfer under Colorado law" and disregarded the characterization given by the Colorado Supreme Court in answer to the questions certified in *Imel.* It found that the wife's interests are inchoate during marriage, are contingent upon divorce and are subject to court discretion, all of which the court felt to be inconsistent with the idea of co-owned property. In another case, *Wiles v. C.I.R.,* 499 F2d 255 (10th Cir 1974), the Court of Appeals questioned the continued viability of its holding in *Collins IV* in view of the statement made by the Oklahoma Supreme Court in *Sanditen* that vesting occurs on the filing of the divorce action. Judge Breitenstein, writing for the court, noted that "[t]he Davis test depends on the transferee's rights in the property during marriage." 499 F2d at 258. Both of these more recent decisions seem to focus on whether the transferee wife has a "vested co-ownership in property of the husband during marriage." 499 F2d at 259.

That new found focus of the Tenth Circuit was short lived. Less than three months after *Hayutin* was decided, the court decided the government's appeal from the Colorado district court resolution of the *Imel* litigation.

The court again reversed direction on the issue of vesting and found a non-taxable division of property under the facts presented. Judge Breitenstein noted:

"The suit for dissolution of the marriage was filed May 7, 1963, and the divorce decree was entered July 31, 1964. The property settlement stipulation is dated February 5, 1965, and the divorce court's order of approval was made four days later. Under the Colorado [Supreme Court's] decision the wife's rights as a co-owner vested in the spring of 1963. Later, the co-owners agreed on division of their respective interests and in the winter of 1965 transfers were made pursuant to the agreement. *We find nothing in Davis which requires that the wife's interest vest before the bringing of the divorce action.*" 523 at 856. (Emphasis supplied.)

Apparently, in the Tenth Circuit it is no longer necessary that the wife's rights vest during marriage so long as they vest prior to the transfer.

The Tenth Circuit decisions demonstrate that confusion abounds. Commentators have pointed out the inconsistencies. *See, e.g.,* Note, "Transfer of Appreciated Property," 25 Cath U L Rev 616 (1976). We admit our inability to discern a persuasive rationale to reconcile the various results. One difficulty we perceive, however, is the reasoning of *Collins IV* and *Imel.* In both cases state courts had simply *labeled* the wife's interest a "species of common ownership;" in both cases the Tenth Circuit deferred to the state court fiction.[11] The only purpose served by the label is to achieve a desired tax result by avoiding the consequences of *Davis.*

Criticism of *Davis* in terms of policy may be justified. However, any adjustment in *Davis* is for the federal courts and federal government. The distinction made by the Oklahoma and Colorado courts appears to be one without substance. In both states the wife has little in the nature of a property interest in her husband's separate property during the marriage. As we said previously, it is incongruous to say that she suddenly becomes a co-owner of property by virtue of a decision to seek a division of

---

[11] The extent of the Tenth Circuit's deference has been criticized. *See, e.g., Hayutin v. C.I.R., supra; Wallace v. United States,* 309 F Supp 748 (SD Iowa 1970), *affirmed* 439 F 2d 757 (8th Cir 1971). *See also,* articles cited at note 10, *supra.*

property, and the rationale becomes even more attenuated in light of the court's powers to make the division in a manner which it deems equitable.

In Oregon, the homemaker is viewed as an economic contributor to the marriage. Assuming, as in this case, that the homemaker is the wife, she is, without more, considered to contribute equally to the acquisition of property. She has a right to a just and proper division of all property, whether jointly owned or not, when the marriage is dissolved. During the marriage, however, that right is inchoate. The husband may manage and dispose of his separate property free from the wife's creditors, and she has no interest therein which can be the subject of a contract. ORS 108.020, 108.060. The equitable rights the wife has in marital assets by virtue of ORS 107.105(1)(e) are not descendible. On the death of the husband, she may be limited to a devised share of his separate property if he dies testate, or to a one-half interest in the net estate, if he dies intestate. In either case, she must survive him. ORS 112.025, 114.105.

■ As the Supreme Court in *Davis* noted, it is not "completely illogical" to view a transfer of property under a decree of dissolution in a common law state as a division of property by co-owners. The transfer cannot be easily pigeon-holed into either of the analogies presented to the court in *Davis.* However, here, as in *Davis,* the more reasonable construction is that the wife by statute has an equitable right to share in the marital estate. Her right is more in the nature of a personal claim. She has no right to any specific property, and the court may satisfy her rights by dividing jointly-owned property, by ordering the husband to transfer to her his separately owned property — both appreciated and unappreciated — or by imposing a lump sum judgment in lieu thereof. A transfer of separately owned, appreciated property pursuant to a decree of dissolution in Oregon most likely will result in taxable gain to the transferor. Until the federal courts tell us otherwise, the tax consequences dictated by *United States v. Davis, supra,* are those which should be considered by the court pursuant to ORS 107.105(2).[12]

_____

[12] The federal question controls the issue of state taxation since an Oregon resident's taxable income for purposes of state taxation is equal to his federal taxable income. ORS 316.048.

## THE PROPERTY DIVISION

The stock transfer ordered by the trial court would provide each party with a 25 percent shareholder interest in the family business. The remaining shares of stock are owned by husband's half-brother, Dwight Morgan. During the marriage, the wife participated in the actual operation of the business only on occasion, and at trial she expressed a dislike for the rigors of logging and farming. In *Slauson and Slauson,* 29 Or App 177, 183-184, 562 P2d 604 (1977), we said:

> "* * * [T]he dissolution decree should seek to disentangle the parties' financial affairs and make them free from each other's interference. The friction resulting from the unsuccessful marriage partnership almost inevitably makes continued business association untenable."

A lump sum judgment in lieu of the stock transfer would substantially disentangle the parties and would avoid the immediate tax consequences of *Davis* as well, giving the husband a little more flexibility in ordering his affairs, and is more appropriate here than an equal division of his corporate stock.

■    An approximately equal property division would be fair under the circumstances of this case. The parties agree that, in order to make payments on a larger lump sum judgment, husband will have to liquidate some of his holdings. He will probably have to recognize substantial capital gains as a result, but it would be speculative to assume he will recognize gains on the appreciated value of all of his assets. For that reason, we cannot accept the net value analysis he has submitted. *(See, supra,* note 3.)

■    The trial court did not make a specific ruling on the *Davis* issue. Neither the court nor the parties had the benefit of a definitive answer on that issue. Under these circumstances, we feel the best course is to remand the case to the trial court so that the judgment awarded wife may be calculated with due consideration for the tax consequences to husband.

■    In view of the property division, we find an award of spousal support or an increase in the wife's award for litigation expenses inappropriate. *Kathrens and Kathrens, supra; Price and Price,* 43 Or App 1029, 607 P2d 756 (1979).

The wife has expressed concern for securing payment of the judgment. We agree that that is an important issue which should be addressed on remand. The parties and the court should also develop a schedule of payments on the judgment. Because the wife has been awarded no spousal support, the schedule should include an immediate payment to the wife.

The decree is to be modified in accordance with this opinion and is affirmed in all other respects.

Affirmed as modified and remanded. No costs to either party.